Good morning, everyone, and welcome to the Ninth Circuit. If you haven't been here before, the total time for argument is on the clock. If you want to reserve time for rebuttal, please let me know, and I will try to help remind you. When you see the red light goes on, that means your time is up. Since we have a very long calendar today, I'm going to hold everyone strictly to their time. The first case for argument is Edward Stolz v. Safeco Insurance Company of America. Counselor? Thank you. Good morning, distinguished judges of the Ninth Circuit Court of Appeals. I'm Don Bennion. I represent Edward Stolz in this matter. Thank you for this time or for taking the time to hear this important case. I'd like to reserve two minutes for rebuttal at the close of following the opposing counsel's statement. Please watch your clock. Thank you. I'd like to start out with a couple of points in introduction. First, the court order, the district court order, the undisputed facts are very one-sided, and I want to point to page 5 of the court order, that's S.E.R. 5, and read. Under the disputed facts section, this is where I think the district court is in error. It says, plaintiff testified in his deposition that he had several combative interactions with a Safeco adjuster on the phone. He testified that when he contacted the adjuster's supervisor, there was an attempt to try to humiliate or intimidate him and that she was not sympathetic to his complaint. Plaintiff's own testimony is the only evidence of these interactions, and defendants dispute them. Defendants do not dispute these interactions. There's no affidavits from either of the two adjusters and representatives from Safeco that talk about any of their telephone conversations. The affidavits from the Safeco— A what? How is that point significant? Because it goes to the manner in which the good faith that Safeco has required, when they issue a policy of insurance to my client, they have a duty of good faith. They're in a superior bargaining position. They're in a position of holding the money. Still kind of waiting to try to figure out how the fact that maybe the person on the other end of the phone call wasn't as sympathetic as possible provides a cause of action. Either the money needed to be paid or it didn't need to be paid. That's really what we're talking about with insurance coverage, isn't it? Well, that's correct. So how does this have anything to do with whether or not money should have been paid by the insurance company and was not? Because when they go to the point of making fun of my client's clothes, of saying that, oh, are you wearing Hager pants, that goes in direct violation of the spirit of the contract. So this whole cause of action is because your client has hurt feelings about his attire? That's not the entire— Is that a cause of action? That is a cause of action. Really? I believe it is. Any authority for the proposition if the insurance company honored its obligations under the contract could still have violated an obligation of good faith and fair dealing because the call representative wasn't as sympathetic as perhaps should have been on the phone? Well, it's more than being unsympathetic. I don't understand that as a cause of action. I just don't see where that comes from, and so I don't see how this factual element you're pointing to makes any difference. And I appreciate the question, Your Honor, but with respect to the fact that this just wasn't one telephone conversation. There was multiple telephone conversations. There were letters written. There was information provided. But, counsel, if we were to reach the merits here, I mean it seems pretty clear that the insurance company kept asking your client for a detailed appraisal, I mean a detailed valuation of what he lost, and your client kept failing to give it to them. So how could the insurance company, if we reach the merits, violate any contractual duty when your client continually failed to give them what appears to me to be the reasonable information they requested? Thank you for that question, Your Honor. It's interesting to note that in Safeco's motion for summary judgment, they don't have the burden at trial, and so they have the burden of production and the burden of persuasion, as you know, in their motion for summary judgment. But they produced my client's responses to requests for production of documents as part of their motion for summary judgment, Exhibit 19. And in that production from my clients, he produced, as required under the insurance policy, a notice of the police incident report, but not only a notice of the police incident report. Documents would show that he had money taken out of his account by the assailants. But, I mean, things that were produced in discovery, I mean, is really neither here nor there with regard to what he gave the insurance company to support his claim before he sued them. What he did give them, as I'm sure you're aware, was a six-page letter. I've read it. Inventory. And according to your brief, he provided them with a detailed itemization of his personal property losses with approximate values for his stolen belongings. Is that what you're referring to? I'm referring to the six-page inventory that was sent through his counsel. Is that the thing with approximate values? That did not have the approximate values. Because when I looked at the ER reference, it gets me to that six-page inventory. So the statement in the brief that it came with approximate values doesn't appear to be correct. Is there something that did provide approximate values for the items on the list? And I apologize for not making that reference more clearly, Your Honor, but there is a reference in the responses to requests for production that do show specific values with respect to. And those aren't the pages cited in your brief, so I presume we're going to have to go out and find it someplace. Do you have a reference that you can give us? I do, Your Honor. I have multiple references. This is Exhibit 19 to Safeco's Motion for Summary Judgment SCR 421 and 422. And that talks about the nature of the e-mail between the adjusters. But with regard to. . . Could I get to the jurisdictional issue for a moment? We had asked you about that. Your motion for summary judgment is seeking $300,000 in punitive damages, but do you allege anything that would support that sort of award under Nevada law? Well, we do with respect to the breach of the. . . the tortious breach of the claim for implied covenant of good faith and fair dealing.  The fact that he had to retain an attorney while this investigation was going on. And a letter was sent from his attorney on April 7, 2009. So in Nevada, it's oppression, fraud, that the insurer acted with oppression, fraud, or malice and subjected the plaintiff to cruel and unjust hardship. And oppression is a conscious disregard for the rights of others. So what in your complaint is it the delays and insults, the intimidations for bullying that you say in your summary judgment, or what supports that charge? Those elements as well as the fact that my client had to retain counsel to deal with Safeco. He felt and he testified in his deposition that they had become very adversarial in their approach to him. And so that's why he retained counsel. And on April 7, 2010, counsel sent him a letter or sent Safeco a letter to the effect of the inventory that was lost. But it largely goes to the attorney. . . It does with respect to breach of the tortious breach of the implied covenant of good faith and fair dealing, Your Honor. So that becomes part of your damage claim. That's correct. And to answer your question more fully with respect to citations, on February 18, 2010, and this is SER 445 and SER 449 in the record, ACH debit electronic transfers to in the amount of $10,000 as well as a $1,000 check was written on my client's account that had been stolen, checks that had been stolen from his car that would be covered under the insurance policy. And was that information provided to the insurance company before your client sued them? It was provided to the police. My question, though, was it provided to the insurance company before your client sued them? It's unclear from the record whether it was provided. My client said that he turned it over to his attorney. His attorney did not send that. So there's nothing in the record which would indicate that that was provided to the insurance company. I cannot cite to the record, Your Honor. All right. I'll reserve my time. All right. Good morning, Your Honors. Andrew Green for Safeco Insurance Company of America. May it please the Court. To respond initially to the jurisdiction question that I think arose, the complaint does include specific damages allegations that if you just add them up, it adds to more than $90,000. Yeah, but only if you have causes of action that are seeking the – that are asserting alternate theories. I mean, if you have a claim that says I want $40,000 for breach of contract and then if you find there's no contract, I want another $40,000 for quantum Marriott recovery, for jurisdictional purposes, you don't add the 40 and the 40 if they're alternative theories. I think that's a fair statement. And here, I don't think you can just simply aggregate causes of action that seek the same damages but with an alternate basis where you can't under Nevada law recover both. So, I mean, frankly, I don't see how in this case you get to the jurisdictional minimum, no matter how you add the counts together. My proposal in that regard that I think is consistent with what the law says is, first, these are causes of action that are distinct, that are capable of separate awards of damages as alleged. I mean, I just don't think you can get, because they're based on the same loss, you can't get the same loss multiple times. I think you may have a basis to argue that, and I take it as common practice in Nevada. I know it is in some states where you state a number in excess of. So the question becomes what is there to justify an estimate on your part at the time of removal for a sufficiently high number, because I don't think the complaint can get you there. I mean, I agree with Judge Bennett on that. You can't add up things where you can't collect at the same time for each of them. And I think when you look at the complaint and you're concerned about the dollar amounts that are alleged with regard to this lost property, you're concerned that the only damages that can be asserted for each of the causes of action is that loss. In this circumstance, there can be other damages beyond whatever. And the complaint doesn't cap damages. It says in excess of, which I know is the practice in some jurisdictions. What is there that would support the proposition that at the time of removal there was a good faith belief or a basis for a belief on defendant's part that the jurisdictional amount requirement was satisfied? There is a specific reference to damages in excess of $50,000 that is specifically tied to the alleged lost property. Then there are the separate references to damages in excess of $10,000 and for the causes of action for contractual breach of implied covenant and the causes of action for tortious breach of implied covenant. Each of those are capable of separate compensatory damages, whether it's in the form of the embarrassment or other loss. You can try to play that card. Do you have any authority that supports the proposition you can collect under each category for the same loss or that, in fact, there were different losses here? What would be the different losses? You can't collect for the same loss in terms of the lost property, but there are other damages that are potentially available. What? There was the discussion there from counsel a moment ago with regard to embarrassment, other losses that he claims from these other items that were taken from him. Emotional distress is what you're saying? Emotional distress, and then there's the punitive damages claim in there. So he argues in his motion for summary judgment that he's seeking $300,000. Is that amount actually in play? Does he have any basis for a punitive damages claim in this scenario, or do his allegations amount to a punitive damages claim? The plaintiff was able to state a claim, or rather a prayer, for punitive damages. Punitive damages are available in Nevada for certainly the tort or breach of implied covenant. But under the law that we have to apply in seeing whether we have jurisdiction or not, I mean, the fact that someone says, I want $300,000 in punitive damages, that doesn't automatically get you over the top for $75,000 if at the time of removal there's no possible basis for that claim under the law of the State that we have to apply, right? I think that's true. I don't think there's any finding in this circumstance or basis to make a finding that there is that lack of possibility. Instead, there are the separate causes of action that each permit damages as well as the ability for plaintiff to pursue punitive damages. Another avenue to look at this that I encourage is looking at the Chavez decision that speaks to a circumstance very similar in this case, which was the matter was removed. There was no challenge to removal by the plaintiff. There was no challenge to removal by the district court. The Chavez decision specifically says that in the absence of that challenge, that there should be considered strong evidence that the amount in controversy is satisfied. And in this case, what came to pass confirms all of that. One, in plaintiff's submission to this court on this issue, plaintiff stated the interpretation of his complaint that was expressed and intended was that the damages at stake were more than $75,000. Then plaintiff filed a motion for summary judgment on that same complaint requesting damages for $350,000. And when looking at Chavez and the other related progeny that says that the complaint should control but also that it's very strong evidence when there's not been a challenge, then there should be a finding that that necessity for a preponderance of evidence is satisfied in this case. Can't we look at evidence presented by the defendant on appeal? I mean, it's a jurisdictional facts issue. We're considering our jurisdiction, and we can consider his claims in the summary judgment and whatever else came up. It's not just what's at the time of the removal. I mean, if you can't see it at the face of the complaint, then we look to whatever evidence the defendant produces to justify removal. I agree with that, and there are other cases that specifically say there is more that can be reviewed to determine the amount in controversy. I mean, you've put in this Luxor report, and you've said, well, it says $500,000 in it, but that's clearly a typo, I mean, to me. I mean, it seems very clear that he was saying 50, the police report says 50, and that somebody just added an extra zero. I mean, is that your best evidence, that the amount in controversy exceeds $75,000, the extra zero in one line or in several lines of the Luxor report? I don't think that it's our best evidence. Instead, it is something that certainly existed at the time of removal, and if the desire is for us to demonstrate by a preponderance that that threshold is satisfied at that time, it should be considered. Are you saying we are limited to looking at evidence that existed at the time of the removal, and what's the case that holds that? I do not intend to say that. I intend to say that the court can look at really anything it wants because the court is capable of reviewing the jurisdiction sua sponte. In this circumstance, that was submitted to the court, I think, because the order from the clerk asked for information with regard to the time of removal. One of the things you submitted was an affidavit. I can't remember whether it was from you or one of your colleagues, saying that there was a settlement demand of $80,000 to $85,000, but the affidavit didn't say when the settlement demand was made. I mean, when was that settlement demand made? That settlement demand, by my recollection, was made after removal. These things, though, that come to light after removal, I submit the court can and should consider because they inform what was intended by the complaint at the time of removal. And the cases that speak to what should be evaluated include that you should look at what becomes available. And the cases that speak to that specifically allow looking at things like responses to interrogatories, looking at things like deposition testimony. However, in this case, I would submit that there is a mounting degree of information and evidence that warrants finding the amount of controversy was satisfied, if for no other reason than it was never challenged. The Chavez case says that that is strong evidence that the amount of controversy is satisfied. Plaintiff has affirmed to this court, both by way of its motion for summary judgment, as well as separate submission to this court, that the amount of controversy was intended to be more than $75,000. All of the other reasons for why it should be a firm restate in our brief. Thank you. I think we have your argument. Thank you. Thank you, distinguished judges. I would just point out that in SCR 421 and 422, this is my client's email. This is January 11, 2010, four days after the theft in the parking lot of Luxor at 11.19 p.m. He wrote to Johanna Pittman at Safeco. Frankly, these communications are very disturbing with respect to her email. And that was in response to an email from Ms. Pittman. And that continued with regard to the conduct of Sam Anderson from Safeco. And in the Hilton Hotels v. Butch Lewis Productions case, a Nevada case from 1993, the court there held where a wrongful action is done in the course and scope of a contractual insurance relationship, the act can give causes of action to both tort and contractual breach of the implied covenant of good faith and fair dealing. And I just want to point to that because I do think that it should not go unnoticed because their actions were in deliberate contravention of the intention and spirit of the contract. They were not looking to facilitate my client. And frankly, they frustrated his purpose to the point that he had to go out and retain counsel. And that's not within the course and scope of the contract. It's not within the good faith requirements that are required under Nevada law and under federal law. And because of that, we respectfully request that this court find the district court was in error in granting summary judgment in behalf of defendant Safeco and hold Safeco accountable for the premiums, the annual premiums of $2,091 they were receiving from my clients each and every year and had been for a decade. Thank you. And we thank both sides for their argument. The case of Edward Stoltz v. Safeco Insurance is submitted.
judges: Clifton, Ikuta, Bennett